UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAITH WOOD,

        Plaintiff,

                                                Case No. 08-13613

v.                                                Hon. Lawrence P. Zatkoff

FORD MOTOR COMPANY, and
AUTOALLIANCE INTERNATIONAL, INC.,

        Defendants.
_____/

**<u>OPINION AND ORDER</u>**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 2, 2009

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on Defendants' motion for summary judgment [dkt 17]. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion is GRANTED.

**II. BACKGROUND**

The present case involves a claim brought against Ford Motor Company ("Ford") and AutoAlliance International, Inc. ("AAI") (collectively "Defendants") by former employee Faith Wood ("Plaintiff") under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Plaintiff claims that as a direct result of her approved FMLA leave, she was downgraded in a

performance review, placed on an attendance improvement plan, informed that her medical leave reflected on her leadership, given a leadership coach, and targeted for removal. Defendants maintain that their actions with respect to Plaintiff were unrelated to her FMLA leave.

Plaintiff was employed as the plant manager at AAI, a joint venture between Ford and Mazda. She reported to Gary Roe ("Roe"), the President and CEO of AAI. The Vice President of Human Resources for AAI, Rex Johnson ("Johnson"), also reported directly to Roe. In June 2006, Plaintiff took an approved ten-week medical leave for an emergency hysterectomy. Plaintiff claims to have had a positive working relationship with Johnson prior to her leave, but Defendants disagree. A month after returning from her medical leave, Plaintiff alleges that Roe informed her that he did not need a CEO, a plant manager, and a lean manufacturing manager, implying that he was considering eliminating either the job of plant manger or lean manufacturing manager. The lean manufacturing manager job was eventually eliminated, while Plaintiff's position was not.

At the end of 2006, Plaintiff received her performance review for that year. Roe rated Plaintiff as an "Achiever," as she was rated throughout her twenty-year career with Defendants, although Roe mentioned her medical leave in evaluating her overall performance. Roe stated that Plaintiff's "multiple health and personal events . . . impacted her attendance and hence ability to steer the manufacturing team." Pl.'s Resp. Br. Ex. 6, p. 3. Following Plaintiff's receipt of her performance review, Roe met with Plaintiff to discuss the evaluation and informed Plaintiff that he would like to see improvement in three areas: attendance, more consistent leadership, and improved interpersonal dealings. Roe informed Plaintiff that he would be monitoring her attendance, and Defendants hired a leadership coach to meet with Plaintiff to address areas for improvement. Defendants assert that Roe's concerns were related to Plaintiff's unplanned vacation days, often late

arrivals to meetings, poor judgment in taking days off, poor interpersonal communication, and unilateral activity with union representatives. Specifically, Roe cited Plaintiff's decision to take time off to go Christmas shopping at a time when termination packages were being distributed, Plaintiff's last minute decision to leave work after her daughter was cut from a soccer team, and Plaintiff's mood swings that made people want to avoid her.

Plaintiff subsequently sent a written letter of dispute to AAI's human resource department regarding the use of her medical leave as a basis for evaluating her performance. The dispute was submitted to Johnson, who forwarded the letter to Ford's human resource department. Johnson then met with Plaintiff to discuss the dispute, wherein Plaintiff claims that Johnson informed her that there would be repercussions for her dispute and that it could hurt her career. Out of fear for her job security, Plaintiff asked for her letter of dispute to be withdrawn. Johnson believed that Roe was entitled to see Plaintiff's rebuttal to her evaluation, but Johnson claims that Plaintiff informed him that he would regret it if he brought Plaintiff's dispute to Roe's attention. Shortly thereafter, Plaintiff approached Johnson to discuss their poor working relationship and suggested that one of them return to vehicle operations. Johnson took this as a threat to his job and soon authored a memorandum in which he concluded that it would be in AAI's best interest if Plaintiff were to be removed as plant manager. In the memorandum, Johnson provided a timeline of recent events in Plaintiff's tenure at AAI, wherein he listed the date Plaintiff began working as plant manager, Plaintiff's performance evaluations, and her FMLA leave. Below the timeline, Johnson explained why he thought Plaintiff should be removed as plant manager. He did not list Plaintiff's attendance or medical leave as the basis for his opinion, citing only numerous instances of Plaintiff's poor interpersonal communication and attitude.

3

In the first quarter of 2007, Roe noted improvement in Plaintiff's leadership. However, in the second quarter of 2007, Roe contends that Plaintiff's leadership and attendance waned, prompting Roe to rate her performance as "Achiever" but "trending to improvement required" in her interim 2007 performance evaluation. During this time, Plaintiff claims that Roe began criticizing her for petty issues, complaining that Plaintiff did not sit next to Roe during meetings, did not appear interested during meetings, and appeared surly at times. Roe maintains that his criticisms served as coaching to improve Plaintiff's leadership and to make Roe and Plaintiff appear as a unified front. Pleased with Plaintiff's performance for the remainder of 2007, Plaintiff was again rated as an "Achiever" in her final 2007 performance evaluation.

In the fall of 2007, Plaintiff began looking for employment outside of AAI. Ford human resource officials offered Plaintiff a position outside of AAI, which was at a lower grade level, but the same rate of pay as Plaintiff's position as plant manager of AAI. Plaintiff declined the offer and remained AAI's plant manager, but she continued to seek employment outside of Ford and AAI and retained an executive search firm. In February 2008, Caterpillar, Inc. offered Plaintiff the position of Quality Director, with a starting annual salary of $200,820.00 and a one time signing bonus of $70,000.00 plus bonus eligibility. In March 2008, Plaintiff was notified that Roe had recommended and approved her for a bonus of $114,600.00. Plaintiff tendered her resignation from AAI on March 20, 2008, but did not leave until April 2008, after collecting her $114,600.00 bonus. In 2009, Caterpillar paid Plaintiff wages and bonuses totaling more than $375,000.00. Plaintiff claims her Caterpillar salary is lower than her salary at AAI.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

The retaliation provision under the FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this [subchapter]." 29 U.S.C. § 2615(a)(2). A retaliation claim under the FMLA is analyzed under the burden-shifting framework used in Title VII claims, originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and later refined in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). *See also Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).

Under the *McDonnell Douglas* framework, Plaintiff first has the burden of proving, by a preponderance of the evidence, a prima facie case of retaliation. *See Burdine*, 450 U.S. at 252–53.

5

Plaintiff may meet this burden by showing that: (1) she was engaged in activity protected by the FMLA; (2) her employer knew that she was exercising her FMLA rights; (3) her employer took adverse action against her; and (4) there is a causal connection between the protected FMLA activity and the adverse employment action. *Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 555-56 (6th Cir. 2006) (citing *Arban v. West Publishing Corp.*, 345 F.3d 390 (6th Cir. 2003)). Proof may be offered in the form of either direct or circumstantial evidence. *See Skrjanc*, 272 F.3d at 315. If Plaintiff establishes a prima facie case, Defendants must articulate a legitimate, non-retaliatory reason for their actions. *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 731 (6th Cir. 2000). To meet their burden, Defendants "must clearly set forth, through the introduction of admissible evidence, the reasons" for their actions. *Burdine*, 450 U.S. at 225. Should Defendants carry this burden, Plaintiff has an opportunity to prove, by a preponderance of the evidence, that Defendants' stated reason is pretext for unlawful retaliation under the FMLA. *Id.* at 253. Plaintiff can establish pretext by showing that Defendants' proffered reasons have no basis in fact. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329-30 (6th Cir. 1994).

However, when an FMLA action is based on direct evidence of discrimination—i.e., evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions—a Plaintiff need not proceed under the *McDonnell Douglas* framework. *Daugherty v. Saja Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008) (finding direct evidence of retaliation where employer stated that employee would not have a job at the end of the employee's FMLA leave). When there is direct evidence of retaliation, the burden shifts to the employer to demonstrate, by a preponderance of the evidence, that it would have made the same decision absent the impermissible motive. *Id*.

To constitute adverse employment action, an employment decision or action must be "materially adverse" to a reasonable employee and produce an injury or harm. *Burlington N. & Sante Fe R. v. White*, 548 U.S. 53, 67-68 (2006). The determination of whether action by an employer is materially adverse is a fact-specific inquiry that "depend[s] upon the particular circumstances" of the case, although materially adverse action is not limited to actions that "solely affect the terms, conditions, or status of employment, or only those acts that occur at the workplace." *Id.* However, petty slights, minor annoyances, and other trivial harms do not amount to adverse action. *Id.* at 68 (noting that "it is important to separate significant from trivial harms"). In the present context, an employer's action is materially adverse if it "might have dissuaded a reasonable employee from exercising her rights under the FMLA." *Carroll v. Potter,* No. 3:05-CV-108-S, 2007 U.S. Dist. LEXIS 82737, at *13 (W.D. Ky. Nov. 6, 2007) (citing *Burlington*, 548 U.S. at 68).

Plaintiff claims to have suffered the following adverse employment actions in retaliation for her FMLA leave: (1) she was given a negative reference to her leadership skills on her 2006 performance evaluation; (2) her performance was nit-picked by the CEO at AAI; (3) she was told by the director of human resources at AAI that disputing her performance evaluation could hurt her career; and (4) she was targeted for removal by the director of human resources at AAI. Pl.'s Resp. Br. at 12. In analyzing Plaintiff's alleged acts constituting adverse action, the Court considers it relevant that Plaintiff was rated an "Achiever" in her final performance evaluations for 2006 and 2007, maintained the highest level position at AAI, and was approved for a bonus of $114,600.00 in early 2008 based on her 2007 performance.

**A.      2006 PERFORMANCE EVALUATION**

Plaintiff argues that Defendants' statement that Plaintiff's medical leave impacted her

attendance and ability to lead her team constitutes a materially adverse action. The Court disagrees. While negative employment ratings may constitute adverse action, such is not the case here. The statement does not state that Plaintiff's medical leave in any way impaired her attendance or ability to lead her team, and Plaintiff was rated as an "Achiever" as she was throughout her twenty-year career with Ford and AAI. Further, Johnson subsequently removed the statement from her evaluation. *See Caroll,* 2007 U.S. Dist. LEXIS 82737, at *14 (holding that a single "Letter of Warning" relating to work missed due to FMLA leave did not constitute adverse action where the letter was ultimately rescinded). In this context, the Court finds that this comment alone would not dissuade a reasonable employee from exercising her FMLA rights.

Even if the performance evaluation constitutes a material adverse action, the Court finds that Defendants have met their burden to demonstrate that their action was not pretextual. Plaintiff has presented direct evidence of a causal relationship between Defendants' allegedly adverse action and her FMLA leave, such that Plaintiff need not proceed under the *McDonnell Douglas* framework. Defendants specifically stated in Plaintiff's 2006 performance evaluation that her medical leave impacted her attendance and ability to lead her team. This statement requires the conclusion that Defendants were partially motivated by unlawful discrimination when evaluating Plaintiff.

However, the Court finds that no reasonable juror could conclude that Defendants would not have listed Plaintiff's attendance and leadership as areas needing improvement absent her FMLA leave. With respect to Plaintiff's attendance, Defendants have shown that Plaintiff was consistently late to meetings, took vacation days at ill-advised times given her managerial position, and took vacation days in a sporadic and last-minute manner. With respect to Plaintiff's leadership, Defendants have shown that in addition to her inconsistent attendance, Plaintiff's unilateral

agreements with union representatives, mood swings, and poor interpersonal communication skills provided the impetus for this area of desired improvement. Plaintiff has neither denied nor disputed Defendants' assertions. Thus, a reasonable finder of fact must conclude that, more likely than not, Defendants would have made the same decision to seek improvement from Plaintiff in these areas regardless of whether she took FMLA leave.

**B.    NIT-PICKING**

Plaintiff argues that she suffered a material adverse action when Defendants criticized her for not sitting next to Roe during meetings, not appearing interested during meetings, and appearing surly. The Court does not agree that this conduct is significant enough to dissuade a reasonable employee from exercising her FMLA rights. The *Burlington* Court suggested that seemingly insignificant acts may be material to a reasonable employee depending on the circumstances. *Burlington*, 548 U.S. at 69 (stating that an employer's failure to invite an employee to lunch is normally trivial, but may be significant if it was a weekly training lunch that contributed to the employee's professional advancement). However, Plaintiff has not attached any significance to Defendants' acts under the circumstances such that their conduct would be material under *Burlington*. The Court is not convinced that a reasonable fact finder could conclude that these actions constitute anything more than petty slights or minor annoyances.

The Court also finds that Plaintiff has failed to establish a causal connection between Defendants' actions and her FMLA leave. Plaintiff has not presented evidence requiring the conclusion that Defendants' nit-picking was motivated by retaliatory animus, and therefore must proceed under the *McDonnell Douglas* framework. Plaintiff contends that Defendants' acts of nit-picking her performance were causally related to her FMLA leave based on the temporal proximity

between the nit-picking and her medical leave. However, temporal proximity alone is insufficient to prove that Defendants retaliated against Plaintiff because of her FMLA leave. *See Johnson v. Univ. Of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000) ("temporal proximity alone does not support an inference of retaliatory discrimination in the absence of other evidence"). Plaintiff also admits that she felt the nit-picking was done in retaliation for complaining about her 2006 performance evaluation—not because she took FMLA leave. Pl.'s. Resp. Br. at 8. The Court therefore finds that Plaintiff has failed to demonstrate a causal connection by a preponderance of the evidence.

Moreover, Defendants have provided legitimate, non-discriminatory reasons for their criticisms of Plaintiff. Roe desired Plaintiff to sit next to him during meetings so they, as CEO and plant manager, would appear as a unified front. Roe contends that he criticized Plaintiff for appearing disinterested and surly during meetings because he wanted to improve her leadership, explaining that a plant manager should not appear disinterested and surly during meetings. Plaintiff has failed to show that Defendants' explanation has no basis in fact; she neither denies nor disputes that she appeared disinterested and surly. Thus, the Court finds that no reasonable finder of fact could conclude that, more likely than not, Defendants' explanation is pretextual.

## C.  STATEMENT THAT DISPUTING PLAINTIFF'S 2006 PERFORMANCE EVALUATION COULD HURT HER CAREER

The Court finds that Plaintiff has failed to establish a causal connection between her FMLA leave and Johnson's statement that disputing her performance evaluation could hurt her career. The Court first notes that Plaintiff has failed to present evidence requiring the conclusion that Johnson's statement was motivated by retaliatory animus, and therefore must proceed under the *McDonnell Douglas* framework.

"In assessing the relevancy of a discriminatory remark, we look first at the identity of the

10

speaker. An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of . . . discrimination." *EEOC v. Int'l House of Pancakes*, 411 F. Supp. 2d 709, 715 (E.D. Mich. 2006) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 345-55 (6th Cir. 1998)). However, "remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, [are] relevant." *Ercegovich*, 154 F.3d at 715 (citing *Wells v. New Cherokee Corp.*, 58 F.3d 233, 237-38 (6th Cir. 1995)). Here, Johnson did not hold managerial authority over Plaintiff's position; that authority was held by Roe. Plaintiff also has not presented evidence suggesting that Johnson played a meaningful role in decisions affecting Plaintiff's career, such that his statement would be relevant. Johnson's statement is therefore not indicative of unlawful discrimination.

Moreover, Plaintiff has not presented evidence demonstrating that Johnson's alleged statement was causally related to her act of taking FMLA leave, as opposed to her act of disputing a performance evaluation. Retaliation for disputing a performance evaluation is an issue separate from retaliation for taking FMLA leave. To infer a causal relationship, evidence must be produced to support such an assertion, and Plaintiff has presented none aside from temporal proximity. *See Johnson*, 215 F.3d at 582 ("temporal proximity alone does not support an inference of retaliatory discrimination in the absence of other evidence"). Thus, the Court finds that no reasonable finder of fact could conclude that, more likely than not, Johnson's statement was causally related to Plaintiff's FMLA leave.

**D.     TARGETING FOR REMOVAL**

The Court finds that Plaintiff has failed to establish a causal connection between Johnson's

memorandum, which voiced his opinion that it would be in the best interest of AAI that Plaintiff be removed as plant manager, and Plaintiff's FMLA leave. The Court first notes that Plaintiff has failed to present evidence requiring the conclusion that Johnson's action was motivated by retaliatory animus. Johnson listed Plaintiff's medical leave in a timeline of recent events related to Plaintiff's tenure at AAI, but this background information does not require the conclusion that Johnson authored the memorandum because of Plaintiff's FMLA leave. Plaintiff must therefore proceed under the *McDonnell Douglas* framework.

As discussed *supra*, Johnson's statements are not indicative of discrimination due to his lack of managerial authority and influence over Plaintiff. *See* Part IV(C). Additionally, Defendants have provided legitimate, non-discriminatory reasons for Johnson's actions. In his memorandum, Johnson provided numerous reasons supporting his opinion that it would be in the best interest of AAI that Plaintiff be removed from the plant manager position, all of which related to Plaintiff's interpersonal communication skills and attitude. Johnson did not use Plaintiff's medical leave or its effect on her attendance in support of his opinion. Plaintiff has made no showing that Johnson's stated reasons for authoring the memorandum have no basis in fact. Thus, the Court finds that no reasonable finder of fact could conclude that, more likely than not, Defendants' explanation is pretextual.

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

                                      S/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

Dated:  December 2, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 2, 2009.

                                      S/Marie E. Verlinde
                                      Case Manager
                                      (810) 984-3290